

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-84,021-04

### EX PARTE LYDELL GRANT, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 1288802-C IN THE
### 351ST DISTRICT COURT OF HARRIS COUNTY

RICHARDSON, J., filed a concurring opinion, in which KELLER, HERVEY, and WALKER, J.J. joined.

### CONCURRING OPINION

I join this Court's order granting actual innocence relief to Applicant and write separately to clarify the reasons for the delay in issuing this order.

When an applicant files a habeas application and the convicting court makes findings of fact or approves the findings of the person designated to make them, the clerk of the convicting court (also referred to as the district clerk) has the responsibility to transmit the complete writ record to this Court. Both Article 11.07 § 3(d) of the Texas Code of Criminal Procedure and Texas Rule of Appellate Procedure 73.4(b)(4) make this clear. Moreover, the Texas Constitution, Chapter 11 of the Texas Code of Criminal Procedure,

and Texas Court of Criminal Appeals precedent confer authority on this Court to grant habeas corpus relief, including actual innocence relief in final felony convictions. When the trial court makes findings and recommendations, the record needs to support them. If the submitted record does not support the trial court's findings and recommendations, it is difficult – if not impossible – for this Court to grant the relief sought. To reiterate, it is the responsibility of the district clerk to forward the complete record; it is not this Court's responsibility to assure that we have the entire record presented to the trial court. Indeed, in most cases, this Court has no independent means of knowing whether any exhibits, documents, or other parts of the record (such as the Houston Police Department report that we discuss below) may be missing. That burden falls upon either the applicant through his attorney or the trial court because they are in the best position to know what constitutes the complete record. The parties must take measures to be sure this Court has the complete record in order to make its decision. In fact, lawyers have access to this Court's TAMES system through the attorney portal and can confirm whether we have received exhibits, such as the confession in this case. And surely, in cases in which the State recommends actual innocence, it behooves the appropriate agency to provide this Court with the right evidence – namely the Houston Police Department report we discuss below.

When it is obvious from the record presented to this Court that something is missing, we may request that the record be supplemented, or remand it for further proceedings. So it is here. In this case, this Court made three separate requests for items that should have been included in the initial record. Certainly, the most critical piece of evidence was the alleged confession by another person who claimed to have committed this crime and was

subsequently indicted by the State. That confession and the Houston Police Department report were inexplicably left out of the record forwarded to this Court. It is not clear if the District Clerk ever received the confession, but the failure of Applicant's attorney to confirm this Court's receipt of the confession at the time of the initial case submission ultimately led to delays in this case. These delays happened to overlap with the beginning of the COVID-19 crisis and accompanying statewide quarantine, slowing the process down even more. In addition, it became clear only recently that the Houston Police Department might have known in September 2019 that someone else was involved in this case; knew in December 2019 that someone else admitted to the conduct at issue in this case; and knew in February 2020 after the Houston Police Department's report was complete that Applicant did not commit the crime for which he was convicted. For reasons that are unclear, neither the District Clerk, nor the State, nor the Applicant's attorney initially provided this report to this Court. We did not receive it until March 2021.

A brief review of the facts of this case and the law on actual innocence is helpful here. Applicant was convicted of murder based on the testimony of six eyewitnesses who positively identified him both during the police investigation of the incident and at trial. Alleging actual innocence based on post-conviction DNA testing and the confession of another person, Jermarico Carter, Applicant filed a habeas application in the county of conviction. The Harris County District Clerk then forwarded the application, which this Court received on January 2, 2020.

To be declared actually innocent, "an applicant must prove by clear and convincing evidence that no reasonable juror would have convicted him based on the newly discovered

evidence." *Ex Parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996). Here, the basis of Applicant's claim hinged on eyewitness testimony, post-conviction DNA testing, and the confession of Jermarico Carter. After its initial review of the record, this Court determined that it had not received a copy of Jermarico Carter's confession. To satisfy the hefty burden set out in *Elizondo*, Applicant – through his attorney – needed to provide this confession. Accordingly, on April 1, 2020, this Court remanded the case to the trial court to obtain that critical piece of evidence. This process may have looked different if this Court had received the Houston Police Department report at the time the case was originally submitted or any time before March 2021. Based on the report we now know exists, this was an eyewitness case. Applicant had no motive, no intent, and no connection to the victim in this case.

At this time, Texas courts began experiencing delays based on COVID-19 restrictions. One month after remand, on May 1, 2020, this Court received a video revealing Jermarico Carter's admission of suspicious contact with the decedent on the night in question. But the parties did not mention the Houston Police Department report that was not forwarded to us until March 2021. That same week, the Court was attacked by ransomware and was unable to access all documents for approximately three weeks. Once past that hurdle, this Court remanded the application for a second time on July 1, 2020, directing the District Clerk to forward photographs of Jermarico Carter taken shortly before or after the year of the offense and to order the eyewitnesses to respond in affidavits to Applicant's actual innocence claim in light of the fact he was identified by six individuals during the trial. This Court also directed the trial court to make further findings of fact as

the original findings failed to address why this Court should discount the testimony of the six eyewitnesses from the trial. Although this Court requested affidavits from all available witnesses, the State contacted five witnesses and ultimately provided this Court with an unsworn statement from a single witness who recanted his testimony. In addition, this Court issued an order on July 10, 2020 requesting the District Clerk to supplement the record to include missing pages. On October 9, 2020, the trial court requested a 90-day extension to provide the information this Court requested, which this Court granted on October 26, 2020. It was not until March 3, 2021 that this Court received a supplemental record from the Harris County District Clerk that included additional information from one eyewitness, expert testimony regarding the eyewitnesses in this Court's possession, and the newly discovered Houston Police Department report. Only then, after having received the DNA evidence in January 2020, the inculpatory statements of Jermarico Carter in May 2020, and the supplemental information from Harris County in March 2021, did this Court have everything needed to review the fully developed record and bring it to conference pursuant to internal timelines.

This Court recognizes the importance of actual innocence claims and the careful work that must take place at each stage of the process. Indeed, it is the duty of this Court to review the entire record in each case to determine whether claims are valid. It is not that this Court is reluctant to grant actual innocence; it's merely that we are unable to do so without a complete record. Here, this Court reviewed the record and requested additional evidence that was needed before granting relief on an actual innocence claim. While this

case may have taken longer than expected or than Applicant hoped it would, delays in this case could have been prevented if critical evidence had been provided at the outset.

The District Attorney and trial court recommend that this Court find Applicant – who insisted for years that he didn't commit this crime – actually innocent. Based on the complete record that is now in front of us, Applicant has shown that another person, Jermarico Carter, admitted to committing this crime; Carter's DNA was found on the victim; Carter has now been indicted for that murder; and the only witness from whom the State has shared a statement has acknowledged he could have been mistaken in his identification of Applicant. Applying our standards on innocence, we find that no reasonable juror would have convicted Applicant on this newly discovered evidence.

With these thoughts, I concur in the Court's order granting actual innocence relief to Applicant.

FILED:      MAY 19, 2021

PUBLISH